Ramon L. Espinoza.

2427 Hackberry st.

Stockton Caalifornia

95205

02/06/2023

**FILED**

FEB 07 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

## IN THE UNITED STATES FEDERAL DISTRICT
## COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

Ramon L. Espinoza. ]

Plaintiff  ]

Vs. ]

Rick Mroczek ]

ZBS LAW LLP ]

LoanCare LLC ]

Defendant's  ]

Request for Jury Trial

Reserve the Right To Amend

Case # **2:23  CV 0 2 2 8 - TLN JDP PS**

## 5.5 MILLION DOLLAR CIVIL LAWSUIT FOR NON-JUDICIAL WRONGFUL
## FORECLOSURE

"Cujusque Rei Potissima Pars"][The Principle Part Of Everything Is In The Beginning]

Ramon L. Espinoza. proceeding *in propia persona*, files civil lawsuit for wrongful foreclosure on the property located at 2427 Hackberry street  Stockton California 95205 The plaintiff alleges the foreclosure is "Void" because the foreclosure was initiated by a party without standing. The defendant did not have legal authority to sign the notice of default letter on behalf of the trustee. The defendant violated Federal Laws and the provisions defined in 15 U.S.C. Sec. 1692 false misrepresentation while collecting a debt. The defendant wrongfully foreclosed on the plaintiff and violated the Truth in Lending Act, Regulation Z, 12 CFR §226.23, breached the contract, and slandered the title. Plaintiff also brings his claim forward for slander of credit and infliction of emotional, distress. The defendant in this case is a debt collector as advertised in the media and noted at the bottom of the business emails. The defendant violated the FDCPA, including **misrepresentation, fraud, harassment, unfair means, and deception to collect a debt.**

1

The above-mentioned claims are fatal flaw to the non- judicial foreclosure action and renders the foreclosure **void**, including orders in eviction court. The attached exhibits will verify the foreclosure was initiated by a party without standing.

## I. Lack of Standing:

1.1 The defendant who initiated the non-judicial foreclosure did not have standing to execute the power of sale clause in the deed of trust. The lack of authority to execute the power of sale clause and the other claims mentioned herein is the basis for this wrongful foreclosure lawsuit.

## II. Violation of The FDCPA:

2.1 The law firm, or the attorney, did not meet the requirements mandated in the Fair Debt Collection Practices Act (FDCPA), necessary to be a legal debt collector.

2.2 The FDCPA mandates the attorney and the law firm must have a license to be a debt collector, a bond, and they must be registered with the Attorney General in the State in which they are collecting.

2.3 The debt collector in this case is in violation of the FDCPA, they do not meet the legal requirements to be considered a debt collector and therefore have no standing before the court. 2.4 The violation of the FDCPA, is a Federal question and therefore Federal Court has jurisdiction to decide on the matter. Picking v. Pennsylvania R. Co. 151 Fed. 2nd 240; Pucket v. Cox 456 2nd 233. Pro se pleadings are to be considered without regard to technicality; pro se litigant's pleadings are not to be held to the same high standards of perfection as lawyers. Platsky v. C.I.A. 953 F.2d. 25.

2.5 Additionally, pro se litigants are to be given reasonable opportunity to remedy the defects in their pleadings. Reynoldson v. Shillinger 907F .2d 124, 126 (10th Cir. 1990); See also Jaxon v. Circle K. Corp. 773 F.2d 1138, 1140 (10th Cir. 1985) (1). Warnock v. Pecos County, Tex., 88 F3d 341 (5th Cir. 1996) Eleventh Amendment does not protect state officials from claims for prospective relief when it is alleged that state officials acted

in violation of federal law.

2.6 The Federal Law mandates any debt collection company attempting to collect debt within the State of California, must be bonded and licensed to do so. Failure of the Corporation to maintain active surety bond, warrants grounds for immediate ceasing of collection activities and reporting to major credit bureaus.

2.7 A third party collection agency that violates any provision of the FDCPA, is liable to civil and criminal penalties which may include monetary compensation to the victim.

2.8 The debt collector company cannot at any point engage in abuse, threats, coercion, **misrepresentation, fraud, harassment, unfair means, and deception to collect debt.**

2.9 The debt collection company must provide proof that they have the authority to collect fees, interest or expenses above the original balance; such proof may be a signed document by the debtor.

### III. Violation of The Truth In Lending Act:

3.1 The defendant Rick Mroczek  violated the Truth in Lending Act, Regulation Z, 12 CFR §226.23, which states that the security agreement signed with a lender can be rescinded if they have not provided the proper disclosures. The original debt was actually zero because the Plaintiff's financial asset was exchanged for FED's promissory notes in an even exchange. The defendant Mroczek Rick mislead State Court when he executed the unlawful non- judicial foreclosure case against the plaintiff's property in State Court in San Joaquin County in the State of California

3.2 The attorney does not have a license to practice law and therefore is not qualified to represent a fictitious corporation in court.

3.4 The Supreme Court ruled lawyers and attorneys are NOT licensed to practice law, the nature of lawyer- craft in America as per the United States Supreme Court; The practice of Law CAN NOT be licensed by any state/State. (Schware v. Board of Examiners, 353 U.S. 238, 239).

3.5 The defendant misrepresented himself to the court as a licensed attorney when he/she

3

does not have a license to practice law. A certificate is not a license to practice Law as an occupation, nor do business as a law firm.

## IV. Jurisdiction:

4.1 The Constitution and 28 U.S.C. § 1332 vest federal courts with jurisdiction to hear cases that "arise under" federal law.

4.2 The Constitution vests federal courts with the authority to hear cases "arising under th[e] Constitution [or] the Laws of the United States." U.S. Const. art III, § 2. Congress vests federal district courts with subject-matter jurisdiction over cases involving questions of federal law: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### V. The Two Jurisdictions for The Court to Operate Under:

5.1 Plaintiff is only aware of two jurisdiction the court can operate under as per the Constitution, and those jurisdictions are **Common Law**, and **Admiralty Jurisdiction**.

5.2 If the court chooses to proceed under Admiralty Jurisdiction, plaintiff will need the court to inform him where the rules of procedures for admiralty jurisdiction can be found.

### VI. A Federal Question- Jurisdiction and Statement of a Claim:

6.1 The test for determining whether allegations are sufficient to confer federal question jurisdiction has two prongs.

6.2 First, pursuant to statute, the plaintiff must present a federal question-a claim "arising under the Constitution, laws, or treaties of the United States. See: *18. 28 U.S.C. § 1331 (1982). This statutory requirement is grounded in the Constitution. See U.S. Const. art. III, § 2. "1"* Second, courts have added the requirement that the federal question must be "substantial." *See Hagans v. Lavine, 415 U.S. 528, 536-38 (1974); Bell v. Hood, 327 U.S. 678, 682-83 (1946); 13B C. Wright, A. Miller & E. Cooper, Federal Practice and*

4

*Procedure § 3564, at 66-77 (1984).*

6.3 The plaintiff pleaded factual content and evidence that is documented in the defendant's records that allows the court to draw the reasonable inference that the defendant is guilty of violating Federal Laws when he signed the default letter on behalf of the trustee without legal documentation to verify legal authority.

6.4 The exhibit marked "A" will show the document used to execute the power of sale clause in the deed of trust was signed by a party that did not have standing to initiate the Non-Judicial Foreclosure and therefore the foreclosure is void.

6.5 The exhibit marked "B" is a copy of the deed of trust which shows who the legal trustee is in the deed of trust. (place the exhibits in 6.4 and 6.5)

### VII. Reservation of Rights Under UCC-1-308:

7.1 I have reserved my rights under the UCC 1-308, formally 1-207, and demand the statutes used in this court be construed in harmony with Common Law.

7.2 The code is complimentary to the common law, which remains in force, except where displaced by the code.

7.3 A statute should be construed in harmony with the common law, unless there is a clear legislative intent to abrogate the common law.

7.4 The code was written as not to abolish the common law entirely. I was not involved with an international maritime contract, so in good faith, I deny that such a contract exists, and demand the court proceed under Common Law Jurisdiction.

### VIII. Facts of The Dispute:

The foreclosure is void because it was initiated by a party without standing.

8.1 The attorney is in violation of the Federal Security

8.2 The attorney unlawfully signed the notice of default on behalf of the trustee which created a fatal flaw to the action:

5

8.3 The defendant in this case is in violation of the Truth in Lending Act z.

8.4 The defendant cannot verify agency.

8.5 The defendant misrepresented himself/herself to the court as a licensed attorney when he does not have a license to practice law.

8.6 The fact the defendants issued a notice of default letter to execute the power of sale clause in the deed of trust will verify the defendants contracted to provide a loan to the plaintiff, and the defendants owed a legal duty to the plaintiff.

8.7 The defendant's duty was breached because they never provided a loan to the plaintiff.

8.9 The alleged loan was an exchange of the plaintiff's signed promissory note for electronic credits from Federal Reserve.

8.10 Promissory Notes and other commercial instruments are legal tender and financial assets to the originator and a liability to the lender. UCC §1-201(24), §3-104, §3-306, § 3-105, UCC §§8-102 (7), (9), (15), (17), §8-501, §8-503, §8-511, UCC §§9-102(9), (11), (12)(B), (49), (64), 12 USC 1813(l)(1).

8.11 The defendant's accounting records will show the corporation has an offsetting liability to the homeowner pursuant to FAS 95, GAAP and Thrift Finance Reports (TFR), and the alleged loan was always an asset to the defendants.

8.12 These records include: a. **FR 2046 balance sheet**, b. **1099-OID report**, c. **S-3/A Registration Statement**, d. **424-B5 Prospectus** and, e. **RC-S & RC-B Call Schedules.**

8.13 The corporation never **registered** the commercial instrument because they knew it was a financial asset to the debtor, and that there was a breach.

8.14 The breach of contract has damaged the plaintiff in the following manner, and plaintiff is demanding compensatory damages to reimburse the plaintiff for costs associated with the injury. All the monthly payments made on a fake loan plus interest for the number of year's payments were made and legal expenses.

6

8.15 Plaintiff also demands punitive damages as a remedy for the defendant's conduct that was intentional and excessively reckless. The wrongful foreclosure has caused negative effects on plaintiff's credit report.

8.16 The plaintiff also has other claims for relief because he will prove there was or a conspiracy to deprive him of property without the administration of justice, in violation of plaintiff's due process of law under Title 42 U.S.C. 1983 (Constitutional injury), 1985 (Conspiracy) and 1986 ("Knowledge" and "Neglect to Prevent" a U.S. Constitutional Wrong).

8.17 Under Title 18 U.S.C.A. 241 (Conspiracy), violators "shall be fined not more than $10,000 or imprisoned not more than ten (10) years or both." **The foreclosing party lacked standing to foreclose** because they did not have legal authority to execute the power of sale clause in the deed of trust, and therefore the "Notice of Default and Election To Sell" document has a "Fatal Defect" which robbed the legal system of Jurisdiction and the Non – Judicial foreclosure is unlawful.

8.18 The legal Trustee is the person who has standing to execute the power of sale clause in the deed of trust. In this case there is no legal trustee because the promissory note and deed of trust were **never registered into the trust**, because the promissory note was bundled and sold during the securitizing process.

8.19 The deed of trust states the repayment of the debt is evidenced by the "NOTE," however the "Original" note was not filed in the record or included in the notice of "Notice of Default" letter.

8.20 Without that Note, the defendants cannot verify there was any debt.

8.21 It is well known in the legal community **a trust deed** is always used together with a **promissory note** that sets out the amount and terms of the alleged loan.

8.22 The deed of trust, and the promissory note must always be together, and without the note and the loan accounting entries, the attorney has failed to prove there was any debt, a second fatal flaw to the wrongful foreclosure.

7

8.23 The debt collector company cannot at any point engage in abuse, threats, coercion, misrepresentation, fraud, harassment, unfair means, and deception to collect debt. The attorney is in violation of the **FDCPA**, as they do not have a licenses to collect a debt, they have no bond in place to be a debt collector and they are not registered in the States they are attempting to collect in. These legal documents must be placed on the court record to verify the defendant is a legal debt collector.

Plaintiff's claims are brought forward Under Common Law:

## IX. Elements for Common Law:

9.1 Controversy (The listed defendants)

9.2 Specific Claim (wrongful foreclosure)

9.3 Specific Remedy Sought by Claimant (5.5 million dollars)

9.4 Claim Must be Sworn To (Affidavit of Verification attached), and I will verify in open court that all herein is true.

## X. Elements of A FDCPA Claim:

10.1 A plaintiff who brings a suit under the FDCPA must prove the following elements in order to successfully make out his claim:

(1) That plaintiff is a "consumer" as defined by 15 U.S.C. § 1692 a (3);

(2) That the debt arises out of a transaction entered into for personal purposes.

(3) That the defendant is a "debt collector" as defined by 15 U.S.C. § 1692a (6); and

(4) That the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692 a-1692.

8

10.2 The plaintiff is a consumer as shown by the alleged mortgage loan and unlawful non judicial foreclosure filed in State Court against the plaintiff's property.

10.3 The alleged loan was to secure personal housing for the plaintiff and his family. The defendant is a debt collector as noted in their emails and phone communications as well as the business description.

10.4 The defendant violated provisions defined in 15 U.S.C. Sec. 1692 false misrepresentation in the course of collecting a debt.

10.5 The FDCPA mandates debt collectors can't use false, deceptive, or misleading practices.

## XI. Parties:

11.1 plaintiff is a resident of San Joaquin County in California

11.2 Rick Mroczek

11.3 ZBS LAW LLP.

11.4 LoanCare LLC.

11.5 The Foreclosure Service is believed to be a law firm corporation operated from California and is in the business of conducting non-judicial foreclosures in San Joaquin County in California

### XII. The Truth in Lending Act, Regulation Z, 12 CFR §226.23:

12.1 The original debt was zero because the Plaintiff's financial asset was exchanged for FED's promissory notes in an even exchange. The failure to disclose the true nature of the exchange is clearly misrepresentation, fraud, harassment, unfair means, and deception to collect debt.

### XIII. Breach of Contract:

9

13.1 On or about Novenber 05 2012 the plaintiffs purchased a home and obtained a mortgage loan from, PINNACLE CAPITAL MORTGAGE CORPORATION, in the approximate amount $98,188.00.

13.2 The plaintiff was never provided a loan; the original debt was actually zero because the plaintiff's financial asset was exchanged for FED's promissory notes in an even exchange.

13.3 The alleged loan was created with plaintiff's signature because all commercial instruments such as promissory notes, credit agreements, bills of exchange and checks are defined as legal tender, or money, by the statutes such as 12 USC 1813(l)(1), UCC § 1-201(24), §3-104, §8-102(9), §§9-102(9), (11), (12)(B), (49), (64).

13.4 These statutes define a promissory note or security to be negotiable (sellable) because it is a financial asset. This is necessary because contracts requiring lawful money are illegal pursuant to Title 31 USC §5118(d) (2). All debts today are discharged by promises to pay in the future.

13.5 Federal Reserve notes are registered securities and promises to pay in the future. They are secured by liens on promissory notes of collateral owned by real people.

13.5 The statutes do not provide the Federal Reserve Corporation a monopoly on promissory notes, as debt collectors insist.

13.6 Plaintiff's signature created the promissory note in dispute, and it was sold to the Federal Reserve in exchange for plaintiff's signed note.

13.7 Plaintiff's promissory note never became a registered security, and a financial asset that can be negotiated because, for commercial instruments to be legal tender, they must be secured by a maritime lien on a prepaid trust account recorded at the county and registered on a UCC-1. It then becomes a registered security and a financial asset that can be negotiated.

13.8 The defendants further complicated the fraudulent process by selling their payables to another entity to remove it from their balance sheet.

10

13.9 **This is called securitization or off-balance sheet financing.** No loan was provided to the plaintiff, and the defendants failed to file evidence on the record to prove a contract existed.

13.10 The original contract and an accounting of the loan entries was never filed in the wrongful foreclosure case that was filed against plaintiff's property.

13.11 The Attorney who signed the "Notice of Default" document to execute the power of sale clause did not have standing, and therefore notice of default has a fatal flaw, and the foreclosure judgment must be vacated and this claim granted for the full amount demanded.

## IXV. Scheme to Defraud:

14.1 The contract should be rescinded because the defendant did not provide full disclosure, the contract is extremely deceptive and unconscionable, In re Pearl Maxwell, 281 B.R. 101

14.2 The Truth in Lending Act, Regulation Z, 12 CFR §226.23, states that the security agreement signed with a lender can be rescinded if they have not provided the proper disclosures. The original debt was zero because the Plaintiff's financial asset was exchanged for FED's promissory notes in an even exchange.

14.3 Promissory Notes and other commercial instruments are legal tender and financial assets to the originator and a liability to the lender. If a security interest in the note is perfected, by recording it on a lien as a registered security, the maker or originator becomes an entitlement holder in the asset.

14.4 But the defendants do not understand that they have this liability because most people are unaware of it.

a.      UCC §1-201(24), §3-104, §3-306, §3-105,

b.      UCC §§8-102 (7), (9), (15), (17), §8-501, §8-503, §8-511

c.      UCC §§9-102(9), (11), (12)(B), (49), (64)

d.     12 USC 1813(l)(1)

14.5 The defendant's records will show the defendants have an offsetting liability to the plaintiff pursuant to FAS 95, GAAP and Thrift Finance Reports (TFR).

14.6 These records include:

a. FR 2046 balance sheet,

b. 1099-OID report,

c. S-3/A registration statement,

d. 424-B5 prospectus and

e. RC-S & RC-B Call Schedules

14.7 The defendants never registered the plaintiff's signed promissory note (commercial instrument), because they know it is showing as a financial asset on their books.

14.8 The defendants did not register the promissory note to establish a security interest in the financial asset to take the position of a secured creditor.

14.9 The promissory note is not listed on a maritime lien against the prepaid trust account and filed with the county recorder and put on a UCC-1.

a. §8-102(13), §9-203; §9-505, §9-312

b. 46 USC §§31321, 31343, 46 CFR 67.250, §9-102(52), §9-317, §9-322

14.10 Plaintiff demands the original foreclosure claim to be set off for recoupment, and to have the assets cancel out the liabilities according to:

a. FAS 140, §3-305, §3-601, §8-105, §9-404

14.11 It is a violation of both State and Federal law for a bank to sell an unregistered note that is a security. That violation provides a right to rescission of the contract pursuant to Statutes.

**XV. The Alleged Loan:**

15.1 The exact monthly payments of the alleged mortgage loan varied according to property taxes and other fees paid but a typical interest only monthly payment was

$ 695.00 including reserves for the payment of taxes and insurance.

15.2 Beginning in January 1st 2013 and continuing until November 2015 the plaintiff made timely payments to Ocwen loan servicer

15.3 In April 2022 LOANCARE LLC claimed the plaintiff was behind on payments and hired Foreclosure attorneys ZBS LAW LLP, to commence foreclosure.

15.4 On August 19, a Notice of Default was issued and signed by the attorney working for the Foreclosure Services and approximately 91 days later a Notice of Trustee Sale scheduling a non-judicial foreclosure auction for January 9 2023, was transmitted to the plaintiff.

15.5 LoanCare LLC, and/or the attorney operating the Foreclosure Services transmitted to various credit reporting agencies, including Equifax, false adverse information about the plaintiff, causing his credit to be impaired.

## XVI. Legal Prejudice:

16.1 Legal prejudice refers to a condition shown by a party that will defeat the action of an opposing party.

16.2 In other words, it is a fact or condition which may defeat the opposing party's case, if the same is established or shown by a party to litigation.

16.3 The plaintiff provides evidence in the notice of default document and the Deed of trust that will prove the power of sale was executed by an agent without standing, and this prejudiced the plaintiff and therefore requests damages both compensatory and punitive as relief for the prejudice suffered.

## XVII. Failure To Establish Agency:

17.1 The people have rights; Corporations do not have rights. Among these "Rights" is

13

the right to contract, the people have this right under 42 USC 1981.

17.2 The people exercise this right by their signature and/or Social Security Number.

17.3 **Corporations cannot sign and therefore cannot enter into any contract, with an attorney.**

17.4 The right to contract is reserved to the people. This is established by the age-old principle of "Agency". To establish an "Agency", the "Principal" must ask the "Agent" to perform a task.

17.5 The "Agent" must agree to perform the task. It is a time-tested principle, of "American Jurisprudence" that the "Court" must not rely upon the "Agent" to prove "Agency".

17.6 The "Court" must follow the "Principal" to establish "Agency". The law is simple, no "Principal" no "Agency" to "Capacity to Sue". Case must be dismissed.

### XVII. Federal Question- Violation Of The FDCPA, Sec. 1692,

18.1 This is an action brought by a consumer and one of the violations of the Fair Debt Collection Practices Act1 (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]).

18.2 The plaintiff is a consumer allegedly obligated to pay the alleged consumer debt the defendants used as grounds for filing the wrongful Non- Judicial Foreclosure action against the plaintiff's property.

18.3 The transaction was primarily for family household purposes, so under the FDCPA's definition of a "debt", this consumer debt is covered under the FDCPA. Therefore, subject matter jurisdiction exists under 28 U.S.C. § 1331.

18.4 The defendant, and the named corporation are debt collectors as defined in Title 15 of the United States Code, section 1692a(6) of the Act.

14

### IXX. The Defendant Is A Debt Collector:

19.1 The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

19.2 This definition includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. In this dispute the debt collector used false, deceptive, and harassing debt collection tactics against the plaintiff.

19.3 The debt collection agent is not licensed by the State to be a legal debt collector, the agent's law firm is also not licensed by the State they are collecting in, or any other State to be a legal debt collector as mandated in the FDCPA.

19.4 The agent or the law firm had no bond to be a debt collector and therefore is in violation of the FDCPA.

19.5 The court rules mandate attorneys have to have a license to practice law, and the debt collector must be working under an attorney with a license to practice law.

19.6 Lawyers and attorneys are **NOT licensed** to practice law, the nature of lawyer- craft in America as per the United States Supreme Court; The practice of Law CAN NOT be licensed by any state/State. (Schware v. Board of Examiners, 353 U.S. 238, 239).

19.7 The practice of Law is AN OCCUPATION OF COMMON RIGHT! (Sims v.

15

Aherns, 271 S.W. 720 (1925).

19.8 The debt collector in this case lied and used deceptive means to attempt to collect a debt.

19.9 The debt collector in this case does not have a license to collect, a bond nor is the debt collector registered with the Attorney General for my State.

19.10 The debt collector's law firm is also mandated by the FDCPA to have a license to collect debts, a bond, and must be registered with the Attorney General for the State in which they are collecting.

19.11 When the debt collectors fail to obtain the legal credentials to collect debts they are before the court without standing and their documents must be stricken from the record.

19.12 The plaintiff is a consumer as shown by the alleged mortgage loan and unlawful non judicial foreclosure filed in State Court against the plaintiff's property.

19.13 The alleged loan was to secure personal housing for the plaintiff and his family. The defendant is a debt collector as noted in their emails and phone communications as well as the business description.

19.14 The defendant violated provisions defined in 15 U.S.C. Sec. 1692 false misrepresentation while collecting a debt.

19.15 The FDCPA mandates debt collectors cannot use false, deceptive, or misleading practices.

## XX. Recourse:

20.1 The Recourse appears in the Uniform Commercial Code at 1-103.6, which says: The Code is complimentary to the Common Law, which remains in force, except where displaced by the code. A statute should be construed in harmony with the Common Law unless there is a clear legislative intent to abrogate the Common Law.

## XXI. Elements for Breach of Contract:

21.1 There is a contract that was breached.

21.2 The breach is material.

21.3 The breach leads to direct and/or consequential damages.

21.4 The breach occurred within the last four years.

### 1st Claim- Wrongful Foreclosure:

The foreclosing party did not have standing to execute the power of sale clause in the deed of trust, and therefore the non- judicial foreclosure is void.

### 2nd Claim- Violation of the FDCPA:

The defendant violated one or more of the provisions contained in 15 U.S.C. §§ 1692 a-1692.

### 3rd Claim- Violation of The Truth In Lending Act:

The Truth in Lending Act, Regulation Z, 12 CFR §226.23

### 4th Claim- Breach of Contract:

The defendant is in breach of contract, as the original debt was zero because the Plaintiff's financial asset was exchanged for FED's promissory notes in an even exchange.

### 5th Claim Violation of Federal Trust and Lien Laws:

The defendant violated Federal Trust and Lien Laws when he signed on behalf of the trustee without legal authorization.

### 6th Claim- Slander of Title:

The defendants have caused to be recorded various documents including a Notice of

Trustee Sale which has impaired the plaintiff's title which constitutes slander of title.

### 7th Claim- Slander of Credit

The plaintiff allege that the actions and inactions of the defendants have impaired their credit.

### 9th Claim- Infliction of Emotional Distress:

The defendants have intentionally or negligently taken actions which have caused the plaintiffs severe emotional distress.

**Wherefore,** having set forth various causes of action against the defendants, the plaintiffs

pray for the following relief:

1. This Court Vacate the foreclosure sale  that was autioned on January 09 2023 based on the attorney's fraudulent misconduct mentioned in the claim, and grant damages.

2. The actions of defendants be determined unfair and deceptive business practices in violation of Federal Laws, and Federal Security statutes.

3. To have the alleged debt discharged.

4. To be awarded compensatory and punitive damages provided for in the amount of 5.5 million dollars including costs and legal expenses.

5. That the Plaintiff be awarded consequential damages to be fully proved at the time of trial.

7. That the Court grant any other relief that may be just or equitable.

8. The defendants contact the credit reporting agencies and correct the false information that was reported to them.

_____  02/06/2023

Ramon L. Espinoza

# Exhibit A

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

This office is enforcing a security interest of your creditor. To the extent that your obligation has been discharged by a bankruptcy court or is subject to an automatic stay of bankruptcy, this notice is for informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

**The loan servicer has fulfilled its obligation under either California Civil Code section 2923.5 or 2923.55 (as applicable). Please see Declaration of Compliance attached hereto.**

**Dated: 08/18/2022**

**ZBS LAW, LLP, as Trustee**

**Rick Mroczek, Trustee Sale Officer**



Upon your written request, the Beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) Provide additional time in which to cure the default by transfer of the property or otherwise; or (2) Establish a schedule of payments in order to cure your default; or, both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact

**Lakeview Loan Servicing, LLC**

**C/O LoanCare, LLC**

**800-909-9525**

**C/O ZBS Law, LLP**

**30 Corporate Park, Suite 450**

**Irvine, CA 92606**

**PHONE: (714) 848-7920**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

**NOTICE IS HEREBY GIVEN:** That ZBS Law, LLP is either the original Trustee, the duly appointed substituted Trustee, or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated 11/05/2012, executed by RAMON L. ESPINOZA, AN UNMARRIED MAN, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR PINNACLE CAPITAL MORTGAGE CORPORATION ITS SUCCESSORS AND ASSIGNS as Beneficiary, recorded 11/16/2012, as Instrument No. 2012-150451. of Official Records of San Joaquin County, California; describing land therein as: As more particularly described on said Deed of Trust.

The subject obligation includes **NOTE(S) FOR THE ORIGINAL** sum of **$98,188.00.** A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

**The monthly installment of principal and interest which became due on March 01, 2022, late charges, and all subsequent monthly installments of principal and interest.**

**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.**

**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance. Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.**

Doc #:  2022-098987
08/19/2022 08:40:07 AM
Page 1 of 5    Fee: $109.00
Steve J. Bestolarides
San Joaquin County Recorder
Paid By:

RECORDING REQUESTED BY:
**ZBS Law, LLP**

WHEN RECORDED MAIL TO:

**ZBS Law, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606**

---

TS No.: 19003180-2 CA
APN: 141-260-05

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**
NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$4,197.83** as of 08/18/2022 and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or mortgage, the Beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.



**Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.**

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

This office is enforcing a security interest of your creditor. To the extent that your obligation has been discharged by a bankruptcy court or is subject to an automatic stay of bankruptcy, this notice is for informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

**The loan servicer has fulfilled its obligation under either California Civil Code section 2923.5 or 2923.55 (as applicable). Please see Declaration of Compliance attached hereto.**

Dated: 7/25/2019                          ZBS Law, LLP fka Zieve, Brodnax & Steele, LLP, as Trustee

**Rick Mroczek, Trustee Sale Officer**

I certify and represent that this mortgage servicer's declaration is accurate, complete and based upon competent and reliable evidence, which the mortgage servicer has reviewed including my review of the mortgage servicer's business records, to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

LoanCare, LLC

DocuSigned by:

*Danielle Caplinger*

E2D9AC0593D2464...

Dated:    8-15-2022

By: Danielle Caplinger, Assistant Secretary

## ATTACHMENT TO NOTICE OF DEFAULT



# California Declaration of Compliance
## (Cal.Civ. Code § 2923.55)

| | |
|---|---|
| **Borrower(s)** | RAMON L. ESPINOZA, AN UNMARRIED MAN |
| **Mortgage Servicer:** | LoanCare, LLC |
| **Property Address:** | 2427 HACKBERRY STREET STOCKTON, CA 95205 |
| **T.S. No.:** | 19003180-2 CA |

The undersigned, as an authorized agent or employee of the below mortgage servicer, declares as follows:

1. ☐ The mortgage servicer has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55(b)(2). At least thirty (30) days have passed since the initial contact was made.

2. ☒ The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code § 2923.55(f) but has not made contact despite such due diligence. At least thirty (30) days have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required because the individual did not meet the definition of "borrower" under California Civil Code § 2920.5(c).

4. ☐ The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" or qualifying tenant-occupied residential real property as defined by California Civil Code § 2924.15.

Furthermore, pursuant to California Civil Code § 3273.10:

1. ☒ During the effective time period of 8/31/2020 through 12/1/2021, the mortgage servicer did not deny a forbearance request that met the conditions of California Civil Code § 3273.10(a).

2. ☐ During the effective time period of 8/31/2020 through 12/1/2021, the mortgage servicer denied a forbearance request that met the conditions of California Civil Code § 3273.10(a). A copy of the written forbearance denial notice attached.
A Forbearance ☐ was ☐ was not subsequently provided.

3. ☐ The requirements of California Civil Code § 3273.10 do not apply because the borrower was not current on payments as of 2/1/2020 and/or did not experience a financial hardship due, directly or indirectly, to the COVID-19 emergency in connection with a mortgage or deed of trust secured by residential property containing four dwelling units or less.

4. ☐ The mortgage servicer is in compliance with California Civil Code § 3273.10 because the mortgage servicer has complied with the relevant provisions regarding forbearance in Section 4022 of the federal Coronavirus Aid, Relief, and Economic Security Act (the Cares Act) (Public Law 116-136), including any amendments or revisions to those provisions, pursuant to California Civil Code § 3273.10(d).

## ATTACHMENT TO NOTICE OF DEFAULT

# Exhibit B

**First American Title Co.**

4171802-KA

ACL515

Recording Requested By /
Return To:
PINNACLE CAPITAL MORTGAGE
CORPORATION
3010 LAVA RIDGE COURT #220
ROSEVILLE, CA 95661
(916) 865-2000
ATTN: POST CLOSING DEPARTMENT

Prepared By:
JOLEEN BRILLANTES
PINNACLE CAPITAL MORTGAGE
CORPORATION
3010 LAVA RIDGE COURT #220
ROSEVILLE, CA 95661
(916) 235-7276

Doc #: 2012-150451
11/16/2012 01:55:58 PM
Page: 1 of 8   Fee: $38.00
Kenneth W Blakemore
San Joaquin County Recorders
Paid By: FIRST AMER TITLE CO

[Space Above This Line For Recording Data]

## DEED OF TRUST

ESPINOZA
Loan #: 6261112684
PIN: 141-260-05
MIN: 10072870000929863
MERS Phone: 1-888-679-6377
Case #: 043-8987119-703

Trustor/Borrower:
RAMON L. ESPINOZA
3505 GATEWAY SP 336B, BETHEL ISLAND, CA 94511

THIS DEED OF TRUST ("Security Instrument") is made on **NOVEMBER 5, 2012**. The trustor is **RAMON L. ESPINOZA, AN UNMARRIED MAN** ("Borrower"). The trustee is **FIRST AMERICAN TITLE COMPANY** ("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of PO Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS. **PINNACLE CAPITAL MORTGAGE CORPORATION** ("Lender") is organized and existing under the laws of **CALIFORNIA**, and has an address of **3010 LAVA RIDGE COURT #220, ROSEVILLE, CA 95661**. Borrower owes Lender the principal sum of **NINETY-EIGHT THOUSAND ONE HUNDRED EIGHTY-EIGHT AND 00/100** Dollars (U.S. **$98,188.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **DECEMBER 1, 2042.** This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in **SAN JOAQUIN** County, California:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.
which currently has the address of **2427 HACKBERRY STREET, STOCKTON**, California **95205** (herein "Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply

365.13                                   Page 1 of 7                          FHA California Deed of Trust - 05/08

6261112684

with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants, with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender Covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charges.** Borrower shall include pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage or deficiency as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made

6261112684

promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not exceed or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property)and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lenders of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the property and Lenders rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a Lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**
(a)    **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults,

6261112684

require immediate payment in full of all sums secured by this Security Instrument if:

    (i)    Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii)   Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b)**   **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341 (d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i)    All or part of the Property, or a beneficial interest in a trust owing all or part of the Property, is sold or otherwise transferred (other than by devise or descent) by the Borrower, and

    (ii)   The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c)**   **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)**   **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)**   **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

6261112684

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property, Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property or small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment of additional security only. If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. After the time required by applicable law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the**

6261112684

county in which the sale took place.

If the lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender may, for any reason or cause, from time to time appoint a successor Trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor Trustee shall succeed to all the title, powers, and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**21. Request for Notice.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**22. Statement of Obligation.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

The Following Rider(s) are to be executed by Borrower and are attached hereto and made a part thereof [check box as applicable]:

☐ Condominium Rider               ☐ Growing Equity Rider          ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider
☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above.

_____
- BORROWER - RAMON L. ESPINOZA - DATE -

6261112684

State of                                 )
                                              )

County of                              )

On _____ before me, _____,

                                                       (here insert name and title of the officer)

personally appeared

_____

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

                                         Signature _____ (Seal)