UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON L. ESPINOZA,<br><br>  Plaintiff,<br><br>  v.<br><br>RICK MROCZEK, et al.,<br><br>  Defendants. | No. 2:23-cv-00228-TLN-JDP<br><br>**ORDER** |

This matter is before the Court on Plaintiff Ramon L. Espinoza's ("Plaintiff") Ex Parte Motion for a Temporary Restraining Order ("TRO"). (ECF No. 5.) For the reasons set forth below, the Court DENIES Plaintiff's motion.

///
///
///
///
///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action appears to arise from foreclosure proceedings initiated by one or more of Defendants against a property formerly occupied by Plaintiff.[1]  On February 7, 2023, Plaintiff, who is proceeding pro se, filed a Complaint against Defendants Rick Mroczek ("Mroczek"), ZBS Law LLP ("ZBS"), and LoanCare LLC ("LoanCare") (together "Defendants") that appears to allege eight purported claims: (1) wrongful foreclosure; (2) violation of the Fair Debt Collection Practices Act ("FDCPA"); (3) breach of contract; (4) violation of "federal trust and lien laws"; (6) slander of title; (7) slander of credit; and (8) infliction of emotional distress.  (ECF No. 1 at 17–18.)  Contemporaneously with the Complaint, Plaintiff filed the instant TRO requesting an order "to force the Banks attorney[']s, the law firms and the loan servicer to cease and [] [desist] all foreclosure and eviction efforts until the title dispute pending in this court can be settled."  (ECF No. 5 at 1.)  Further details regarding the facts underlying this case are unclear.

## II. STANDARD OF LAW

A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing.  *See* Fed. R. Civ. P. 65.  It is the practice of this district to construe a motion for temporary restraining order as a motion for preliminary injunction.  E.D. Cal. L.R. 231(a); *see also Aiello v. One West Bank*, No. 2:10-cv-00227-GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) ("Temporary restraining orders are governed by the same standard applicable to preliminary injunctions.") (internal quotation and citations omitted).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555

---

[1]  It is unclear from the Complaint and the TRO if an individual Defendant, all the Defendants, or none of the Defendants are responsible for initiating and completing the foreclosure.  Plaintiff often references "the foreclosing party" but fails to define who that is.  (*See e.g.* ECF No. 5 at ¶ 24.)

2

U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Costa Mesa City Emp.'s Assn. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted). In cases where the movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of scrutiny must apply. *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005). A preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny. *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, the plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35.

///

### III. ANALYSIS

Plaintiff's TRO lacks clarity, which largely inhibits this Court's ability to determine if Plaintiff is entitled to relief. *See Winter*, 555 U.S. at 22 (requiring a "clear showing" Plaintiff is entitled to relief). Nonetheless, the Court turns to the *Winter* factors to determine, based on the filings presently before the Court, if relief should be granted.

Turning to the first *Winter* factor, Plaintiff's TRO does not directly address the likelihood that he will succeed on the merits of any of his claims. Rather, the TRO appears to raise a series of arguments related to the legitimacy of the foreclosure proceedings. Plaintiff seems to assert he purchased real property financed by a deed of trust and promissory note. (ECF No. 5 at 1–3.) At some point, one or more of Defendants foreclosed on this real property, seemingly due to Plaintiff's failure to pay his monthly payments. (*Id.* at 1–3, 4–6.) Plaintiff argues this foreclosure is unlawful because Defendant(s) who initiated foreclosure proceedings did not and/or do not have the promissory note. (*Id.* at 1–3, 4–6, 10–11.) Plaintiff argues that without the promissory note, Defendant(s) who initiated the foreclosure did so without legal authority. Plaintiff asserts because Defendants do not have the promissory note, Defendants cannot verify or prove there was any debt or establish the existence of their secured interest in the subject property. (*Id.* at 3–5.) Plaintiff also seems to indicate the deed of trust and promissory note were never properly placed in "the trust" due to a "securitizing process." (*Id.* at 2.) Accordingly, Plaintiff appears to also be challenging to soundness of the deed of trust. Further, Plaintiff raises arguments of fraud (*id.* at ¶¶ 25, 34), RICO violations (*id.* at ¶¶ 37, 38), and reasserts his FDCPA argument stating, "Defendants improperly misrepresented themselves to the homeowner and the court to be the party in interest with legal authority to collect on debts secured by deed when in fact they are not authorized to collect on behalf of the true party in interest. . .." (*Id.* at ¶ 26.)

It is unclear how Plaintiff's arguments outlined above relate to the claims for relief in his Complaint. Plaintiff's main argument that Defendants do not possess the promissory note appears unconnected to his underlying allegations. This is likely because the Complaint is wholly lacking in factual allegations. Indeed, the Complaint is void of facts as there are little to no allegations explaining what lead up to this action. The only claim that appears to overlap in title

4

and substance between the TRO and the Complaint is the alleged violation of the FDCPA. However, Plaintiff's discussion of the FDCPA in the TRO is limited to a single conclusory paragraph, paragraph 26, with additional passing mention under a heading "The Scheme To Defraud." (*Id.* at ¶¶ 26, 28.) These sections do not provide any additional insight into Plaintiff's FDCPA claim and do not argue that such a claim would be successful on the merits.

The TRO fails to shed any light onto the claims discussed in the Complaint or provide any substantive argument that would indicate Plaintiff would or even could succeed on any of the claims. Further, it is unclear to the Court, at this stage, whether jurisdiction is proper based on the severe ambiguity of the claims, the lack of alleged facts, and incomplete allegations as to Defendants' residency. As such, the Court finds Plaintiff has failed to establish likelihood of success on the merits.

Even if Plaintiff were able to establish any degree of success on the merits, the Court would deny Plaintiff's TRO because there is no indication Plaintiff will suffer irreparable harm. Plaintiff has a single paragraph under the heading "Irreparable Injury" where he states "[t]he homeowner will suffer 'irreparable injury' if the judge doesn't stop the foreclosure immediately." (ECF No. 5 at ¶ 24.) The remainder of the paragraph argues, as many of the preceding paragraphs do, that Defendant(s) who initiated the foreclosure "did not have legal authority to execute the power of sale clause. . .." (*Id.*) This conclusory statement is insufficient to establish irreparable harm. Even looking past this section of the TRO, the Court is unable to divine what irreparable harm may exist. It appears from the general arguments in the TRO any possible irreparable harm would relate to the foreclosure of the real property at issue in this case. However, relevant facts related to this foreclosure are unknown. For instance, the TRO does not provide any information as to what stage the foreclosure is in (whether Plaintiff still lives in the home, whether the foreclosure process is ongoing, or whether Plaintiff has been evicted). For this reason, there is no indication Plaintiff will suffer irreparable harm absent relief from this Court. *See Caribbean Marine Serv. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). Further, Plaintiff must establish any irreparable injury is imminent in nature. Because it is unclear what stage the foreclosure proceedings are in and whether Plaintiff has already been evicted, it is

impossible to determine if any alleged irreparable injury is imminent.  *See id.*

Additionally, though the status of the foreclosure proceedings is unclear, it appears they may have started as early as 2019 and possibly continued through 2022.  (*See* ECF No. 1 at 20–23.)  If this is true, there would be significant delay between the alleged wrongful conduct and Plaintiff's attempt to seek relief from this Court.  Such a delay runs afoul of this Court's Local Rules governing TRO motions and would be a separate and independent reason for denial.  *See* E.D. Cal. L.R. 231(b) (In considering a motion for TRO, the Court "will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief" and may deny the motion if "the applicant unduly delayed in seeking injunctive relief.").

Because the Court concludes Plaintiff has not made the required showing of either likelihood of success on the merits or imminent and irreparable harm, the Court declines to address the remaining *Winter* factors.  *See MD Helicopters, Inc. v. Aerometals, Inc.*, No. 2:16-cv-02249-TLN-AC, 2018 WL 489102, at *2 (E.D. Cal. Jan. 19, 2018).

### IV.    CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiff's Ex Parte Motion for a Temporary Restraining Order.  (ECF No. 5.)

IT IS SO ORDERED.

DATED:  February 8, 2023

Troy L. Nunley
United States District Judge